Matter of Lyman v New York State Canal Corp. C/O N.Y. Power Auth. (2022 NY Slip Op 05364)

Matter of Lyman v New York State Canal Corp. C/O N.Y. Power Auth.

2022 NY Slip Op 05364

Decided on September 29, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 29, 2022

534239
[*1]In the Matter of the Claim of Lorna Lyman, Respondent,
v
New York State Canal Corp. C/O New York Power Authority et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 8, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Law Office of Melissa A. Day, PLLC, Amherst (Alexis D. Hatten of counsel), for appellants.
Connors & Ferris, LLP, Rochester (Christopher Mesh of counsel), for Lorna Lyman, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed April 7, 2021, which ruled that claimant's work-related injury was amenable to a nonschedule classification.
In January 2018, claimant, a motorized snow operator, sustained injuries, including to her lower back and right outer foot, when she slipped on ice while shoveling a path to a boat. Her subsequent claim for workers' compensation benefits was accepted by the self-insured employer and its third-party administrator (hereinafter collectively referred to as the employer) for a temporary aggravation of a prior right foot condition and was ultimately established for a work-related injury to the right foot. In June 2018, surgery (Kidner procedure with reattachment of the posterior tibial tendon) was performed on claimant's right foot with continued treatment thereafter.
In May 2020, Carrie O'Neil, claimant's treating podiatrist, evaluated claimant's injury for permanency and schedule loss of use, opining that claimant's injury to her right foot warranted a 65% schedule loss of use award based upon a moderate loss of plantar flexion of 15%, a moderate loss of dorsiflexion of 15% and a loss of inversion and eversion of 35%. In August 2020, Robert Karpman, an orthopedic surgeon who performed an independent orthopedic medical examination of claimant, diagnosed claimant with a right foot sprain (with posterior tibial tendon insufficiency status post removal of accessory navicular, and reattachment of the tendon with poor result) and found that she had reached maximum medical improvement and that she had sustained a 20% schedule loss of use of the right foot based upon claimant's loss of inversion. Following hearings and the depositions of O'Neil and Karpman, a Workers' Compensation Law Judge found that claimant's injury had reached maximum medical improvement and that claimant had a continuing chronic painful condition of the right foot and a marked permanent partial medical impairment. Upon administrative review, the Workers' Compensation Board affirmed, finding that, because claimant has a chronic painful condition and severe swelling with minimal improvement after exhausting treatment options, her permanent impairment is amenable to classification as a marked permanent partial disability and not a schedule loss of use. The employer appeals.
We affirm. Workers' Compensation Law § 15 (3) contains a schedule of awards for a permanent partial disability resulting from a loss of specific body parts or functions (see Workers' Compensation Law § 15 [3] [a]-[v]). Workers' Compensation Law § 15 (3) (w) pertains to "all other cases of permanent partial disability" — i.e., those cases that are not amenable to a schedule award. Although impairment of an extremity may be amenable to a schedule award under certain circumstances (see New York Workers' Compensation Guidelines for Determining Impairment § 1.5 at 8 [1st ed 2017]), not all impairments of an extremity qualify, including those involving [*2]a "[c]hronic painful condition of an extremity commonly affecting the distal extremities such as the hands and feet" and accompanied by, as relevant here, "chronic swelling" or "[m]inimal or no reported improvement after claimant has undergone all modalities of chronic pain treatment" (New York Workers' Compensation Guidelines for Determining Impairment § 1.6 [2] at 8-9 [1st ed 2017]). As a result, "[a] nonschedulable permanent partial disability classification, rather than a schedule loss of use award, is indicated where there is a continuing condition of pain or continuing need for medical treatment or the medical condition remains unsettled" (Matter of Tobin v Finger Lakes DDSO, 162 AD3d 1286, 1287 [3d Dept 2018] [internal quotation marks and citations omitted]). "'Whether a schedule loss of use award or a nonschedulable permanent partial disability classification is appropriate constitutes a question of fact for the Board's resolution, and its determination will be upheld if supported by substantial evidence'" (Matter of Rodriguez v Coca Cola, 178 AD3d 1184, 1186 [3d Dept 2019], quoting Matter of Tobin v Finger Lakes DDSO, 162 AD3d at 1287; see Matter of LaClaire v Birds Eye Foods, Inc., 128 AD3d 1298, 1299 [3d Dept 2015]). In this regard, "[t]he Board is free to accept or reject all or part of medical evidence that is offered" (Matter of Parody v Old Dominion Frgt. Line, 157 AD3d 1118, 1120 [3d Dept 2018]; accord Matter of Maunder v B & B Lbr. Co., 166 AD3d 1261, 1262 [3d Dept 2018]).
Although O'Neil, in her May 2020 medical report, opined that claimant's permanent impairment warranted a schedule loss of use award, she subsequently testified that she thought claimant's injury met the criteria for a nonschedule classification, and she explained that she provided a schedule-loss-of-use opinion because claimant only requested an opinion with respect thereto at the time of the initial visit. O'Neil further testified that claimant's permanent impairment in her right foot has resulted in a chronically "painful condition" involving "chronic swelling" and instability, all of which renders her permanent impairment subject to classification under the impairment guidelines as a severe disability. Although claimant has purported preexisting conditions that affect her right foot, including chronic lymphedema which restricts some motion in her feet, O'Neil explained how she did not take into consideration any of claimant's preexisting or comorbid conditions when examining claimant's range of motion and arriving at her conclusions regarding the nature and severity of claimant's work-related injury. O'Neil also opined that claimant's condition is stable and that the prior surgery failed to relieve claimant's pain.
Although Karpman ultimately found that claimant's condition warranted a schedule loss of use award, Karpman agreed with O'Neil that claimant's condition had reached maximum medical improvement at the time of his evaluation of claimant and that [*3]claimant is experiencing chronic pain and severe swelling. Karpman further opined that there are no additional therapy or orthopedic treatments that would improve claimant's symptoms because she has exhausted all kinds of treatment available to her and that claimant has experienced minimal improvement of her condition. In our view, the foregoing medical evidence that claimant suffers from a permanent and chronic painful condition of an extremity (foot) accompanied by chronic swelling constitutes substantial evidence to support the Board's determination that claimant's permanent impairment is amenable to nonschedule classification as a marked permanent partial disability (see Matter of Mayewski v Superior Plus Energy Servs., 192 AD3d 1312, 1314-1315 [3d Dept 2021]; Matter of Tobin v Finger Lakes DDSO, 162 AD3d at 1287; Matter of LaClaire v Birds Eye Foods, Inc., 128 AD3d at 1299; New York Workers' Compensation Guidelines for Determining Impairment § 1.6 [2] at 8-9 [1st ed 2017]). To the extent that any of the remaining contentions raised by the employer have not been specifically addressed, they have been rendered academic in light of our determination or have been examined and found to be lacking in merit.
Lynch, J.P., Aarons, Fisher and McShan, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.