Matter of Narine v Two Bros. for Wholesale Chicken Inc. (2021 NY Slip Op 05375)





Matter of Narine v Two Bros. for Wholesale Chicken Inc.


2021 NY Slip Op 05375


Decided on October 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 7, 2021

531898
[*1]In the Matter of the Claim of Budram Narine, Claimant,
v
Two Brothers for Wholesale Chicken Inc. et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 14, 2021

Before:Garry, P.J., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

LOIS LLC, New York City (Vandana Saunders of counsel), for appellants.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for respondent.



Pritzker, J.
Appeals (1) from a decision of the Workers' Compensation Board, filed March 2, 2020, which ruled, among other things, that Two Brothers for Wholesale Chicken Inc. and Norguard Insurance Company failed to comply with 12 NYCRR 300.13 (b) and denied review of a decision by the Workers' Compensation Law Judge, and (2) from a decision of said Board, filed May 11, 2020, which ruled, among other things, that the claim was properly amended to include claimant's frozen right shoulder.
Claimant, a butcher, was severely injured in a motor vehicle accident on April 22, 2019 when the company truck in which he was a passenger struck a highway overpass, causing cervical spinal fractures and quadriplegia, among other injuries. While claimant was hospitalized, his wife filed a claim for workers' compensation benefits on his behalf, listing his employer as "slaughterhouse" with a street address in Queens. Two Brothers for Wholesale Chicken Inc. and its workers' compensation carrier, Norguard Insurance Company (hereinafter collectively referred to as the carrier), initially denied the claim in all respects, asserting, among other things, that there was no employer/employee relationship or insurance coverage. The Workers' Compensation Board undertook an investigation, which disclosed that there were two companies operating at the listed address, Two Brothers and another company, and Two Brothers' manager confirmed that claimant was its employee at the time of the accident.
The carrier filed a notice of controversy, raising "all issues" at the initial hearing in August 2019 while indicating that its primary defense was that claimant was not an employee, and the testimony of Two Brothers' manager and claimant was contemplated. Claimant raised, as sites of injury, a neck and spinal cord injury, paraplegia and respiratory failure. The Workers' Compensation Law Judge (hereinafter WCLJ) found prima facie medical evidence for claimant's neck and spinal cord injury, respiratory failure and paraplegia and directed the carrier to obtain an independent medical examination (hereinafter IME) within 90 days, continuing the case to address the issues of coverage and employment relationship.
At the next hearing, on November 14, 2019, the carrier expressly withdrew its notice of controversy and objections to the claim and requested only an opportunity to obtain an IME regarding the "sites of injury," objecting to establishing any sites until the IME was completed. The WCLJ issued a decision filed November 19, 2019 establishing the claim for paraplegia, made awards, found prime facie medical evidence for the additional site of right frozen shoulder and directed the carrier to produce an IME regarding additional sites within 60 days. The carrier filed an application for review (form RB-89), requesting that the Board rescind the WCLJ's November 2019 decision and allow further development of the record on the issues of employer/employee relationship and coverage or, in the [*2]alternative, requested that the Board direct a rehearing or reopening of the issues in the interest of justice, acknowledging that it had not objected to the claim on those grounds.
While that application for review was pending, the WCLJ held another hearing on January 21, 2020 and, after ascertaining that the carrier had not obtained or even scheduled an IME as directed and had not appealed that directive, issued a decision filed January 24, 2020 precluding the carrier from obtaining an IME of the frozen right shoulder, and established that site. The carrier filed a second application for review (form RB-89) by the Board, incorporating its first application for review and requesting that the Board rescind the WCLJ's January 2020 decision. The carrier argued that it was improper to amend the claim to include frozen right shoulder and to preclude the IME while the first application for Board review of the WCLJ's November 2019 decision was pending.
The Board thereafter issued two decisions resolving the carrier's applications for review. In a decision filed March 2, 2020, the Board denied the carrier's application for review of the WCLJ's November 2019 decision based upon its failure to preserve the issues raised and noncompliance with 12 NYCRR.13 (b) (2) (ii). The Board issued a second decision, filed May 11, 2020, upholding the WCLJ's January 2020 decision to amend the claim to include a causally-related frozen right shoulder, which it found was supported by record medical evidence. The Board upheld the preclusion of an IME, concluding that the carrier waived the right to obtain an IME by failing, without valid excuse, to take any steps to procure an IME within 60 days as directed by the WCLJ. The carrier appeals from both Board decisions.
We affirm. Initially, the carrier argues that the Board erred in denying its application for review of the WCLJ's November 2019 decision. We disagree. As the carrier failed to raise any objection at the November 2019 hearing to the establishment of an employment relationship or to the issue of coverage, and withdrew its notice of controversy with only one limitation related to obtaining an IME of the additional requested sites, the carrier failed to preserve the issues raised in the application for review and, indeed, waived them. As the Board noted, although claimant was present at that hearing and scheduled to testify, the carrier did not take his testimony or call any witnesses, although the carrier at that point had over six months to investigate the claim. Under these circumstances, the Board did not abuse its discretion in declining to review the WCLJ's decision based upon the carrier's failure to raise these issues at the hearing (see 12 NYCRR 300.13 [b] [4] [v] [a]; Matter of Abdiyev v Eagle Container Corp., 181 AD3d 1132, 1133 [2020]; Matter of Bruscino v Verizon, N.Y., 178 AD3d 1272, 1273 [2019]).[FN1] Moreover, the regulations and the RB-89 form required the carrier, in response to question [*3]number 15 on that form, to specify, among other things, the objection or exception that was interposed to the WCLJ's ruling (see 12 NYCRR 300.13 [b] [2] [ii]). In response to question number 15, the carrier stated that it had "objected to the establishment of the claim for paraplegia at the November 14, 2019 hearing" and conceded that "[n]o exception was noted on the issue of proper employer or proper carrier — this appeal is made in the interest of justice an[d] pursuant to the continuing jurisdiction of the . . . Board." Accordingly, we further discern no abuse of discretion in the Board's denial of the application for review based upon the carrier's noncompliance with 12 NYCRR 300.13 (b) (2) (ii) (see Matter of Barber v County of Cortland, 193 AD3d 1202, 1203 [2021]; Matter of McLaughlin v Sahlen Packing Co, Inc., 192 AD3d 1315, 1316 [2021]).[FN2]
The carrier further argues that the Board erred in denying its request — in the first application for review — for a rehearing or reopening of the claim on the issues of employment relationship and coverage, as further development of the record is required. The carrier's answers to questions 11 and 15 in its RB-89 form request that this relief be granted in the interest of justice. The Board appears to have denied this request, justifiably, based upon the content of the RB-89 form, including the fact that the carrier did not check the box at the top of that form signifying that it was requesting a "Rehearing and Reopening." Moreover, "the decision to grant an application for reopening or rehearing in the interest of justice is a matter left to the Board's discretion" (Matter of Lewandowski v Safeway Envtl. Corp., 190 AD3d 1072, 1076 [2021]; see 12 NYCRR 300.14 [a] [3]; Matter of Carrasquillo v Kiska Constr., Inc., 181 AD3d 1144, 1145 [2020]) and, "[a]bsent an abuse of discretion, the Board's decision . . . will not be disturbed" (Matter of Allen v CPP-Syracuse, Inc., 194 AD3d 1278, 1281 [2021]). Given the procedural history of this claim, including the employer's multiple acknowledgments that claimant was its employee and that coverage was provided by Norguard and the carrier's withdrawal of the notice of controversy at the November 2019 hearing after ample time to investigate this catastrophic work accident, the carrier has not demonstrated that the denial of this request constituted an abuse of discretion.
Turning to the appeal from the Board's May 11, 2020 decision, the carrier argues that the Board erred in upholding the WCLJ's decision to amend the claim to include frozen right shoulder and to preclude it from obtaining an IME. It is undisputed that the carrier failed to conduct, or even take steps to schedule, the IME within 60 days, as directed in the WCLJ's November 2019 decision. The carrier's only explanation at the January 2020 hearing was that it had filed an application for Board review from the WCLJ's November 2019 decision. However, as the WCLJ and Board correctly noted, the carrier [*4]did not — in its first application for review — appeal the issue of the directive to produce an IME. The carrier's appeal of other issues is not an excuse for failing to obtain an IME, and did not operate to suspend its obligation to comply with the directive to procure an IME. Moreover, the December 31, 2019 hearing notice sent to the carrier after that application for review was filed clearly advised that the results of the IME were expected by the scheduled January 21, 2020 hearing, yet the record does not reflect that the carrier took any steps to ascertain if the filing of the application altered its obligation to procure the IME as directed.
"Where a party, especially a carrier, is at fault or without excuse for failing to present evidence [or obtain an IME] on time, it is not an abuse of discretion to deny an adjournment" or preclude that evidence and, indeed, the carrier never requested an adjournment (Matter of Metzger v Champion Intl. Corp., 301 AD2d 800, 802 [2003]; see 12 NYCRR 300.10 [b]). Under the circumstances, and given the carrier's failure to take any steps to conduct the IME despite sufficient time to do so, we do not find that it was an abuse of discretion to preclude it from thereafter procuring an IME (see Matter of Maffei v Russin Lbr. Corp., 146 AD3d 1207, 1208-1209 [2017]; Matter of Prescott v Town of Lake Luzerne, 79 AD3d 1216, 1217-1218 [2010]; Matter of Curtis v Xerox, 66 AD3d 1106, 1108 [2009]; Matter of Hutchins v Callanan Indus., 293 AD2d 902, 902-903 [2002]). The carrier further contends that preclusion and establishing the claim [FN3] deprived it of due process. We disagree, as the carrier was afforded an "opportunity to be heard at a meaningful time and in a meaningful manner" (Mathews v Eldridge, 424 US 319, 333 [1976] [internal quotation marks and citation omitted]; accord Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 469 [2014]; Matter of Maffei v Russin Lbr. Corp., 146 AD3d at 1209). We have reviewed the carrier's remaining claims and find that they are without merit.
Garry, P.J., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: As the Board further noted, in September 2019, the carrier had submitted a C-11 form (Employer's Report of Injured Employee's Change in Employment Status), and a C-240 form (Employer's Statement of Wage Earnings), acknowledging Two Brothers as claimant's employer and Norguard as its insurer well in advance of the November 2019 hearing.

Footnote 2: Contrary to the carrier's broad claim in its answer to question 15 in the RB-89 form, that it objected to the establishment of the claim for paraplegia at the November 2019 hearing, the record reflects that the carrier more narrowly objected to the "establishment of any specific site pending the IME." The carrier did not, at that hearing, object to the claim for paraplegia based upon either a lack of employment relationship or lack of coverage, having withdrawn its notice of controversy, and these claims raised in the first application for review are unpreserved. Moreover, the carrier unjustifiably failed to timely pursue the IME.

Footnote 3: The carrier does not challenge the medical proof in the record to support establishing the additional site for frozen right shoulder but, rather, merely argues that it is not the proper employer and carrier for this claim, issues that it waived when it withdrew the notice of controversy at the November 19, 2019 hearing.